# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Stephen C. Hudson,

        Plaintiff,

Civ. No. 09-2553 (RHK/JSM)
**MEMORANDUM OPINION AND ORDER**

v.

The University of Puerto Rico,

        Defendant.

---

Steven C. Hudson, *pro se*, Brooklyn Park, Minnesota.

James R. Diley, James Diley Attorney at Law, PLLC, St. Anthony, Minnesota, for Defendant.

---

## INTRODUCTION

In this promissory-estoppel action, Plaintiff Stephen C. Hudson, a Minnesota resident, has sued the University of Puerto Rico (the "University"), an instrumentality of the Commonwealth of Puerto Rico. The University now moves to dismiss Hudson's Complaint for lack of personal jurisdiction. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The University is an educational institution with locations throughout Puerto Rico. (Rivera Aff. ¶ 4.) At its facilities, the University provides food and beverage services to students and faculty. (Id. ¶ 5.) Hudson, through his business Public Enterprise, Inc.

("PEI"), develops marketing and business strategies for educational institutions providing food and beverage services. (Id. ¶ 8; Hudson Aff. ¶¶ 3-6.)

Since 1999, the University and Hudson have exchanged several communications regarding PEI's services. (Rivera Aff. ¶ 8; Hudson Aff. ¶ 11.) Such communications were made via telephone, facsimile, and e-mail. (Rivera Aff. ¶ 9.) Hudson then traveled to Puerto Rico on several occasions to further discuss PEI's services. (Id. ¶ 10.) While the parties began to negotiate, no agreement was ever reached. (Id. ¶ 11.)

In September 2009, Hudson filed the instant action alleging that as a result of his good-faith reliance on the University's verbal and written statements, he has suffered economic damages. (Compl ¶¶ 1-3.) Specifically, he asserts that in reliance on University representations that a signed contract was forthcoming, he began to perform work on behalf of the University for which he has not been compensated. (Id. ¶ 4.)

The University does not operate or maintain any offices in Minnesota, nor does it have any representatives, agents, employees, or real property in Minnesota. (Rivera Aff. ¶¶ 6, 13-14.) The University does not maintain a Minnesota telephone number or post office box. (Id. ¶ 15.) In addition, there is no evidence in the record indicating that any University representative has traveled to Minnesota to discuss a contract for PEI's services, or for any other reason. (Id. ¶ 12.) The University has now moved to dismiss Hudson's Complaint for lack of personal jurisdiction.

**STANDARD OF REVIEW**

To survive the University's Motion, Hudson need only make a *prima-facie* showing that personal jurisdiction over the University exists in Minnesota. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). In determining whether Hudson has made such a showing, the Court must view the evidence in the light most favorable to Hudson. Id.[1]

**ANALYSIS**

Jurisdiction over the University must satisfy both the Due Process Clause of the Fourteenth Amendment and the requirements of Minnesota's long-arm statute. Pecoraro, 340 F.3d at 561. However, because Minnesota's long-arm statute extends jurisdiction to the farthest reaches of the Due Process Clause, Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991), the Court's inquiry "collapses into the single question of whether [the] exercise of personal jurisdiction comports with due process." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

In the personal-jurisdiction context, due process is satisfied only where a non-resident defendant has sufficient "minimum contacts" with the forum state "such that summoning the defendant would not offend traditional notions of fair play and substantial justice." Pecoraro, 340 F.3d at 561 (internal quotation marks and citation omitted). "The

---

[1] When deciding whether personal jurisdiction exists, the Court must view the evidence in the light most favorable to the plaintiff only where, as here, it has not held an evidentiary hearing and has instead relied on the pleadings and affidavits. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

central question is whether [the] defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Id. at 562 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). To answer that "central question," the Court must examine five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Pecoraro, 340 F.3d at 562 (citation omitted). The first three factors are of primary importance, while the last two are of secondary importance. Id.

There are two forms of personal jurisdiction ─ specific and general. Digi-Tel, 89 F.3d at 522 n.4. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8 & 9 (1984)). "General jurisdiction refers to the power of [the forum] state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose," id., if the defendant maintains "continuous and systematic" contacts with the forum state, Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting Helicopteros, 466 U.S. at 416, 418-19). In determining the existence of either form of jurisdiction, the Court must be mindful that "the central concern of the inquiry . . . is the relationship among the

defendant, the forum, and the litigation." Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (internal quotation marks and citation omitted).

To support his assertion that the Court enjoys personal jurisdiction over the University, Hudson describes two categories of contacts between it and Minnesota: (1) its participation in the "Practice Based Learning Collaborative" with the University of Minnesota, a Web site blog that may be viewed by Minnesota residents, and (2) its contacts with Hudson while Hudson was located in Minnesota. The Court will address each contact category below.

**A.     The Web site**

Hudson alleges that the University has had significant contact with the state of Minnesota by participating in the Practice Based Learning Collaborative ("PBLC") alongside the University of Minnesota. (Resp. to Mot. at 1.) The PBLC is a Web site blog that keeps readers updated on resources relating to practice-based learning. (Id. Ex. 1.)[2] As the PBLC has no relation to the case at bar, the Court assumes that Hudson believes this contact with Minnesota to be sufficiently continuous and systematic such that the Court may exercise general jurisdiction over the University.

The Eighth Circuit has utilized the analytical framework described in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), in addressing whether the publication of a Web site, accessible in the forum state, is sufficient to establish jurisdiction over a defendant. Lakin v. Prudential Secs., Inc., 348

---

[2] The PBLC blog is located at: http://blog.lib.umn.edu/gruwell/umurpblc/.

F.3d 704, 710-11 (8th Cir. 2003). In Zippo, the court created a "sliding scale" in order to measure the nature and quality of the commercial activity effectuated in a forum state through a Web site:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Zippo, 952 F. Supp. at 1124 (internal citations omitted). In addition to this analysis, the Eighth Circuit also considers the quantity of the contacts with the forum state in determining whether general personal jurisdiction exists as a result of a Web site. Lakin, 348 F.3d at 712.

Upon its review of the PBLC blog, the Court determines that this Web site falls into the category of a "passive" Web site, which is insufficient to establish personal jurisdiction over the University. The blog simply provides information on practice-based learning and does not allow readers to exchange information with the host computer. In addition, Hudson has supplied the Court with no information regarding the quantity of contacts between Minnesota residents and the blog. Accordingly, Hudson cannot establish a *prima-facie* basis for general jurisdiction based upon the PBLC blog because

the "[p]ublication of [a] website . . . by itself is not enough to justify personal jurisdiction." Northbrook Digital, LLC v. Vendio Servs., Inc., 625 F. Supp. 2d 728, 750 (D. Minn. 2008) (Schiltz, J.).[3]

While the PBLC blog in and of itself is insufficient to establish general jurisdiction over the University, Hudson asserts that the University's continuing relationship with the University of Minnesota, which is necessary to create and maintain the PBLC blog, is a contact sufficient to confer general jurisdiction. (Resp. to Mot. at 1.) However, Hudson has provided the Court with no information regarding the relationship between the University and the University of Minnesota, providing only that these entities have been doing business "since 2003 through an on-going Practice Based Learning Collaborative." (Hudson Aff. ¶ 10.) In fact, no real relationship may exist outside of sharing an online forum where both institutions can provide information to readers regarding practice-based learning.[4] Accordingly, Hudson has not made a *prima-facie* showing that the University has had "continuous and systematic" contacts with

---

[3] The PBLC blog does allow users to submit their e-mail address, so that they may receive notifications when the blog is updated. However, this function does not allow readers to exchange information with the host computer, but simply allows readers to place themselves on a mailing list. Nevertheless, even if this function were considered to be an information exchange between readers and the host computer, therefore placing this Web site in the "middle ground" described in the Zippo framework, it would not be enough to establish general jurisdiction over the University. This is because Hudson has put forth no evidence regarding the quantity of contacts between Minnesota residents and the blog. See Lakin, 348 F.3d at 712.

[4] Of note, the staff named in the blog as contacts are all University of Minnesota employees. See http://blog.lib.umn.edu/gruwell/umurpblc/.

-7-

Minnesota sufficient to establish general, personal jurisdiction. Morris, 923 F.2d at 1281.[5]

**B.     Contacts with Hudson**

Hudson next asserts that the Court has specific jurisdiction in this case as a result of the University's many communications with him, while he was located in Minnesota, regarding PEI's services. (Resp. to Mot. at 2.) The University did have several communications with Hudson regarding PEI's services while he was located in Minnesota. However, while "[l]etters, e-mails, faxes and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction, . . . such contacts alone are insufficient to satisfy due process." Greenbelt Res. Corp. v. Redwood Consultants, LLC, 627 F. Supp. 2d 1018, 1026 (D. Minn. 2008) (Frank, J.) (citing Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995); Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982)). Here, the communications between the University and Hudson do not satisfy due process, even if initiated by the University, because they "stand alone as

---

[5] Plaintiff asserted at oral argument that the University participated in a "training session" regarding practice-based learning that allegedly occurred in Minnesota. However, there is no evidence to this effect in the record before the Court. See Wittenburg v. Am. Exp. Fin. Advisors, Inc., 464 F.3d 831, 838 (8th Cir. 2006) ("[A]rguments of counsel are not evidence."). Nevertheless, even if such a training session occurred, this one contact with the forum does not demonstrate the University's "continuous and systematic" presence in Minnesota sufficient to confer general jurisdiction. Morris, 923 F.2d at 1281.

the only contacts [the University] made with Minnesota in connection with [the contract negotiations at issue.]" Greenbelt, 627 F. Supp. 2d at 1026.[6]

Outside of the contacts discussed above, Hudson describes no other interactions between the state of Minnesota and the University. The University has no offices, real property, or representatives in Minnesota. There is no evidence that the University is licensed to do business is Minnesota. All alleged face-to-face negotiations relevant to the present lawsuit took place in Puerto Rico, and if a contract had been executed, it would have been implemented in Puerto Rico. Thus, the acts relevant to this lawsuit "centered" in a foreign state, as the parties were "merely engaged in negotiations with [an individual who] happened to reside in Minnesota." Digi-Tel, 89 F.3d at 525. Accordingly, the record does not reflect that the University purposely availed itself of the privileges of conducting business in Minnesota such that it could reasonably anticipate being haled into court there.[7]

---

[6] At oral argument, Hudson acknowledged that a contract was never formed between the University and PEI. However, even if such a contract had been formed, it would not be enough to confer personal jurisdiction. See Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state.") (internal quotation marks and citation omitted).

[7] The "secondary factors" discussed in Pecoraro do not alter the Court's analysis. 340 F.3d at 562. While Minnesota has an interest in providing its residents a forum in which to litigate disputes, such an interest "cannot make up for the absence of minimum contacts." Digi-Tel, 89 F.3d at 525. In addition, the convenience of the parties does not favor either party, as witnesses reside in both Minnesota and Puerto Rico. Id.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that the University's Motion to Dismiss (Doc. No. 10) is **GRANTED** and Hudson's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 23, 2010
s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge